Ernest Davis filed a worker's compensation of claim against Addison Fabricators, Inc. ("Addison"), based on a work-related injury to his index finger. The trial court found that Davis was totally and permanently disabled and awarded compensation outside the schedule established by the Legislature in § 25-5-57, Ala. Code 1975, a part of the Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975. Addison appealed, and the Court of Civil Appeals reversed the trial court's judgment and *Page 499 
remanded the case, Addison Fabricators, Inc. v.Davis, 892 So.2d 440 (Ala.Civ.App. 2004) ("AddisonI"). On remand, the trial court again ruled that Davis was totally and permanently disabled and awarded compensation outside the schedule. Addison again appealed, and the Court of Civil Appeals affirmed the trial court's order without an opinion. Addison Fabricators, Inc. v. Davis,945 So.2d 496 (Ala.Civ.App. 2005) (table) ("Addison II"). Addison petitioned this Court for a writ of certiorari, which this Court granted. We now reverse and remand.
 I Background
On April 19, 1999, Davis injured his right index finger while operating a shear machine in the course of his work for Addison. He was treated by Dr. Dan Hirschbruner, an orthopaedic surgeon. Dr. Hirschbruner returned Davis to work on light duty on April 20, 1999, and he worked until April 26, 1999, when there was no light-duty work available.
After receiving temporary-total-disability benefits for just under five weeks, Davis returned to work on June 1, 1999, with the restriction of wearing a splint on his injured finger. Dr. Hirschbruner had seen Davis on May 2 and May 26, 1999, and he saw him again on June 18, 1999, when he released Davis to return to work with no restrictions. Davis did not request pain medication sifter the injury, and Dr. Hirschbruner prescribed none. Davis worked for Addison for four weeks after Dr. Hirschbruner released him, until July 16, 1999, and there is no record of his reporting to his supervisor that his finger was giving him difficulties in his work and no record that Davis requested any accommodations from his supervisor for his injury. Davis resigned his position with Addison on July 16, 1999, and three days later went to work for his nephew in the timber business. Davis was unable to grip a saw handle and therefore was unable to perform the manual-labor portions of the new job, but he continued to work for his nephew in the timber business in a created position overseeing the other workers, until the business closed in November 1999.
On April 11, 2000, Addison rehired Davis, who worked at his previous job as a fitter. Davis again performed his job but experienced considerable pain and had difficulty completing the work. He quit his job with Addison on May 25, 2000, and has not held a job since.
On May 8, 2000, Dr. Hirschbruner examined Davis and assessed him as having a 54% physical-impairment rating to the right index finger in accordance with American Medical Association guidelines. Dr. Hirschbruner testified that Davis voiced no complaints of arm pain or of any problems at work during the visit.
Davis suffered a heart attack on August 9, 2000. At that time, in providing his medical history, Davis made no mention of having had any problems with his finger. Later that month, Davis applied for Social Security disability benefits. On September 6, 2000, Davis underwent heart-bypass surgery. He was diagnosed as having coronary atherosclerosis, severe microcytic anemia, and chronic obstructive pulmonary disease. On April 12, 2001, Davis filed his worker's compensation action against Addison.
Addison, by and through its workers' compensation carrier, referred Davis to Dr. John Walker for an independent medical evaluation, which was completed on January 30, 2002. Dr. Walker testified that when he examined Davis, Davis's finger was not swollen or grossly enlarged, and Dr. Walker did not recommend any further treatment or restrictions other than to recommend that Davis not use the finger for gripping or pinching. *Page 500 
Davis's attorney referred him to Dr. Keith Anderson for an additional impairment rating and an opinion as to possible work restrictions. Dr. Anderson testified that at the time he performed his examination, Davis's finger was not swollen and he was not complaining of any arm or neck pain but that he did have a problem with weakness in the injured finger. Dr. Anderson expressed the opinion that Davis should not perform repetitive activities with his right hand and should not work around dangerous equipment; specifically, he should not work around a punch press. At the time of Dr. Anderson's examination, Davis was taking no medication for pain related to his injured finger.
The first time the Court of Civil Appeals reviewed this case, it stated:
 "The case was tried in the Winston Circuit Court on September 10, 2002, with the trial court receiving both oral and written evidence. On January 16, 2003, the trial court entered its judgment, finding Davis to be permanently and totally disabled. Specifically, the trial court found that Davis's injury was to his `right index finger,' and that he
 "Was permanently and totally disabled as the result of the injury above-described, arising out of and in the course of his said employment with [Addison]; because of said injury, and [Davis's] education and training, he is unable to perform work of his trade or obtain reasonably gainful employment, resulting in his permanent and total loss of ability to earn; said injury permanently and totally incapacitates plaintiff from working at and being retrained for gainful employment.'
 "Based on those findings, the trial court awarded Davis $338.65 per week in accrued and future benefits, minus an attorney fee awarded to his counsel. Addison appeals."
Addison I, 892 So.2d at 441. The Court of Civil Appeals then reversed the trial court's judgment and remanded the case, stating:
 "`The trial judge should make a finding of every fact necessary to sustain the judgment of the court.' United Tel. Tel. Co. v. Culiver, 271 Ala. 568, 570, 126 So.2d 119, 120-121 (1961). The trial court in this case neglected to make findings concerning whether Davis's injury entitled Davis to compensation outside of the schedule. Therefore, as we did in Wal-Mart [Stores, Inc. v. Gardner, 885 So.2d 168 (Ala.Civ.App. 2003)], we must reverse the trial court's judgment and remand the cause for the trial court to enter a judgment consistent with this opinion and with the holding of our Supreme Court in Ex parte Drummond Co.[, 837 So.2d 831
(Ala. 2002).]"
Addison I, 892 So.2d at 443.
On remand, the trial court supplemented its findings as follows:
 "Pursuant to the remand of the Alabama Court of Civil Appeals, this trial court's order of January 16, 2003 is amended by adding to the findings of fact, at the end of the paragraph number `1,' the following: `This court further finds that the effects of said injury to plaintiff Ernest H. Davis extend to his body as a whole and produce a greater or more prolonged incapacity than that which naturally results from the injury to his right index finger, said effects interfering with the efficiency of the plaintiffs body as a whole; Sections 25-5-57(a)(3) a and d, Alabama Code 1975, are not applicable."
The trial court cited no evidence to support this supplemented finding. The Court of Civil Appeals affirmed this judgment of the trial court without an opinion in Addison II.
Addison then petitioned this *Page 501 
Court to "issue a writ of certiorari, directing the Court of Civil Appeals to reverse the trial court's finding."
 II Legal Analysis
We begin our analysis by observing that Davis's injury was to one finger. Because this was his right index finger and because the injury involved open fractures to all three bones of that finger, his gripping ability in his right hard is markedly decreased as a result of the injury. The injury to his finger causes pain in his right hand and occasional pain and/or numbness in his right arm, but the pain does not extend beyond his hand to his entire body.
Also, on August 9, 2000, about 16 months after his injury to his finger, Davis suffered a heart attack, and he underwent bypass surgery on September 6, 2000. He was diagnosed with coronary atherosclerosis, severe microcytic anemia, and chronic obstructive pulmonary disease. He does not claim that the heart attack was job-related. He testified that his heart does not "bother" him now, and the discharge statement following his heart surgery says he would have no permanent heart-related limitations.
Davis was 56 years old at the time of trial; he has only a fifth-grade education; and he has never done any kind of work except strenuous physical labor. He testified at trial that he cannot perform normal day-to-day activities because of his hand, that he has no grip strength in his right hand, that he cannot work with machinery, that he cannot perform acts of personal hygiene or care for his yard, that he does not sleep well, that he frequently has to get up during the night because of the pain, and that he consumes three or four ibuprofen or acetaminophen tablets up to six times per day.
Evidence exists from which the trial court could find that the effects of Davis's injury extend beyond his right index finger to his right hand. There is also some testimony concerning the effect of the injury upon his right arm. But the evidence is insufficient to establish that the effects of the injury extend beyond his right arm to other parts of his body. A person who has lost his right hand or his right arm is compensated according to the schedule, and Davis's disability cannot be considered more severe than the injury of such a person.
Ex parte Dunlop Tire Corp., 772 So.2d 1167 (Ala. 2000), involved an employee who had suffered an injury to her arm, which, she claimed, extended into her hand. The trial court awarded benefits according to the schedule in the Workers' Compensation Act, but the Court of Civil Appeals reversed its judgment, saying that the extension of the injury into her hand was sufficient to take the claim out of the schedule. This Court reversed the Court of Civil Appeals' judgment, stating:
 "In reversing the trial court's judgment, the Court of Civil Appeals held that `"if the effects of an arm injury extend to the hand, then one is not limited to the scheduled benefits provided for the loss of an arm."' Morrow v. Dunlop Tire Corp., 772 So.2d [1161] at 1164 [(Ala.Civ.App. 1999)] (quoting Cagle v. Dunlop Tire Corp., 681 So.2d 611, 613
(Ala.Civ.App. 1996), in turn quoting Robbins Tire Rubber Co. v. Elliott, 598 So.2d 931, 933
(Ala.Civ.App. 1992)). This rule is inconsistent with the plain meaning of Ala. Code 1975, § 25-5-57(a), and with logic. Clearly, the loss of an arm includes the loss of a hand. See, e.g., Flicker v. Mac Sign Co., 252 N.Y. 492, 170 N.E. 118 (1930). In Flicker, Chief Judge Cardozo explained that `[w]ith the reservation for greater prudence of exceptional conditions, the scheduled compensation for loss of the *Page 502 
larger member must be accepted as compensation for the loss of its component parts.' 252 N.Y. at 494, 170 N.E. at 118. Accord Nabb v. Haveg Indus., Inc., 265 A.2d 320 (Del.Super.Ct. 1969) (holding that loss of an arm includes loss of the hand); Armstrong Cork Co. v. Sheppard, 222 Miss. 359, 370, 76 So.2d 225, 229 (1954) (`[W]here multiple injuries are sustained by the employee in a single accident, affecting directly two members of the same extremity, if the injuries result in some disability to the greater member other than that occasioned by the disability to the lesser member, the disability rating should be for loss of use of the greater member.'). Therefore, to the extent that Cagle and Robbins Tire Rubber Co. stand for the proposition that `if the effects of an arm injury extend to the hand, then one is not limited to the scheduled benefits provided for the loss of an arm,' those cases are overruled."
772 So.2d at 1170.
Similarly, in Alabama Workmen's Compensation Self-InsurersGuaranty Ass'n v. Wilson, [Ms. 2040523, June 16, 2006] ___ So.2d ___ (Ala.Civ.App. 2006), the Court of Civil Appeals held that "[a]ny interference with the function of both of the employee's arms is of no legal import given that a loss of both arms is itself a scheduled injury." (Emphasis omitted.) InStone Webster Construction, Inc. v. Lanier,914 So.2d 869 (Ala.Civ.App. 2005), Stone claimed that an injury to his right knee caused him to place more weight on his left knee, thereby interfering with the function of both knees. The Court of Civil Appeals held that an injury to an employee's right knee that interfered with the function of the uninjured left knee must still be compensated under the schedule, which provides for the loss of both legs. The court stated:
 "Based on our review of the record in this case, we agree with Stone Webster that the evidence is not sufficient to establish a permanent and total disability on the part of Lanier and that the standard required in order to remove Lanier's injuries from the schedule imposed by § 25-5-57(a)(3), as described in Ex parte Drummond Co., [837 So.2d 831
(Ala. 2002),] has not been met."
914 So.2d at 876.
Before the advent of workers' compensation laws, common-law principles governed compensation for work-related injuries. An unfortunate consequence was expensive and time-consuming litigation, and injured employees frequently were unsuccessful in obtaining compensation because they could not afford to pay an attorney or because their employers could successfully raise common-law defenses such as the fellow-servant rule, the doctrine of contributory negligence, or assumption of risk.[1] A major purpose of the Legislature in adopting the Alabama Workers' Compensation Act was to remove these common-law defenses in most workers' compensation cases and also to minimize the cost of litigation. Various types of injuries were compensated according to a fixed schedule enacted by the Legislature as § 25-5-57. Although the individual worker lost the right to a jury trial in most cases, he gained the right to a speedier and less expensive determination without having to establish that the employer was negligent and that he, the employee, was not contributorily negligent.
The Legislature enacted the schedule in the Workers' Compensation Act with a primary purpose of minimizing costly and time-consuming litigation over work-related *Page 503 
injuries. The Legislature did not totally eliminate litigation, but the possibility of going outside the schedule to compensate injuries was carefully limited.
The Workers' Compensation Act, and particularly the schedule at § 25-5-57(a)(3)a., does not provide for an exception to the scheduled payments. Instead, through Bell v. Driskill,282 Ala. 640, 213 So.2d 806 (1968), as modified by Ex parteDrummond Co., 837 So.2d 831 (Ala. 2002), this Court has created an exception, allowing an unscheduled award for an injury of such severity that it impacts the claimant's entire body. Because this court-created exception is outside the statutory schedule enacted by the Legislature, we must apply it narrowly. Ex parte Brookwood Med. Ctr., Inc.,895 So.2d 1000, 1006 (Ala.Civ.App. 2004) ("[I]t is not the role of the judiciary to `improve upon' legislation such as the [Workers' Compensation] Act, even upon such grounds as necessity based upon the passage of time."); Finch v.State, 271 Ala. 499, 503, 124 So.2d 825, 829 (1960);Piggly Wiggly No. 208, Inc. v. Button, 601 So.2d 907,911 (Ala. 1992); and Birmingham News Co. v. Muse,669 So.2d 138, 142 (Ala. 1995).
There is evidence from which the trial court could find that Davis has suffered a work-related injury to his right index finger and that, this injury extends to his entire right hand. It is unclear from the evidence whether Davis's injury extends further to his right arm. However, it is clear that the injury does not extend beyond his right arm to the rest of his body. He is therefore not entitled to compensation outside the schedule.
 III Conclusion
The trial court's finding that Davis is totally and permanently disabled and is entitled to compensation outside the statutory schedule is clearly erroneous, and the Court of Civil Appeals erred in affirming the judgment based on that finding. We reverse the judgment of the Court of Civil Appeals and remand the case to that court. The Court of Civil Appeals is instructed to remand the case for the trial court to determine the extent of injury to Davis's right index finger, right hand, and right arm, and the extent of disability benefits to which he is entitled.
REVERSED AND REMANDED.
COBB, C.J., and SEE, LYONS, STUART, SMITH, and BOLIN, JJ., concur.
WOODALL, J., concurs in the result.
MURDOCK, J., recuses himself.
[1] 1 Terry A. Moore, Alabama Workers' Compensation
§ 1:4-5 (1998).