MOORE, Judge.
This is the second time these parties have been before this court. In Norandal U.S.A., Inc. v. Graben, 18 So.3d 405, 416 (Ala.Civ.App.2009), this court reversed a judgment of the Jackson Circuit Court ordering Norandal U.S.A., Inc. (“the employer”), to pay Welton “Sonny” Graben (“the employee”) permanent-total-disability benefits pursuant to Ala.Code 1975, § 25-5-57(a)(4)d., a part of the Alabama Workers’ Compensation Act (“the Act”), Ala.Code 1975, § 25-5-1 et seq., on account of a July 10, 1997, right-knee injury. This court held that, in deciding whether the employee’s right-knee injury “ ‘ “extended] to other parts of the [employee’s] body and interfere^] with their efficiency,” ’ ” see Ex parte Drummond Co., 837 So.2d 831, 834 (Ala.2002), so as to fall outside “the schedule,” Ala.Code 1975, § 25-5-57(a)(3)a., the trial court had erred in considering injuries to the employee’s hip, lower back, and right shoulder, which *388 injuries had been conclusively determined to have been caused by a noncompensable April 3, 2004, fall. 18 So.Sd at 410-11. This court further overruled Masterbrand Cabinets, Inc. v. Johnson, 984 So.2d 1136 (Ala.Civ.App.2005) (plurality opinion authored by Murdock, J., with Crawley, P.J., concurring, and Thompson, Pittman, and Bryan, JJ., concurring in the result), aff'd, Ex parte Masterbrand Cabinets, Inc., 984 So.2d 1146 (Ala.2007), which the trial court had relied upon in determining that the pain the employee experiences from the right-knee injury justified treating the injury as an injury to the body as a whole. 18 So.3d at 416. The court adopted a new “pain exception” to the schedule based on the supreme court’s language in footnote 11 in Ex parte Drummond and remanded the case for the trial court to consider whether the pain from the right-knee injury “totally, or virtually totally, physically disable[s]” the employee. Id.
On remand, the trial court entered a revised judgment in which it determined that the employee’s right-knee injury should be compensated outside the schedule for two reasons. First, the trial court concluded that the right-knee injury had altered the gait of the employee, thereby causing symptoms in his hip and low back. Second, the trial court determined that the pain from the right-knee injury totally, or virtually totally, physically disables the employee. The employer timely appealed.
On appeal, the employer is again arguing that the trial court erred in awarding the employee disability benefits outside the schedule.

The Alteredr-Gait Theory

Alabama law has long recognized that an injury to the leg of a worker that alters the manner in which the worker walks and thereby produces pain or other symptoms in the hip or back of the worker constitutes an injury to the body as a whole. See, e.g., Henderson v. Johnson, 49 Ala. App. 191, 269 So.2d 905 (1972); Warrior Stone & Contracting Co. v. De Foor, 241 Ala. 227, 2 So.2d 430 (1941). In Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), our supreme court succinctly explained the reason such injuries should not be compensated within the schedule as a loss, or a loss of use, of the leg:
“[Although the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, ... then the employee is not limited in his recovery ... to the amount allowed under the schedule for injury to the one member.”
282 Ala. at 646, 213 So.2d at 811. In Ex parte Drummond, supra, our supreme court restated that portion of the Bell test when it held that “ ‘if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.’ ” 837 So.2d at 834 (quoting 4 Lex K. Larson, Larson’s Workers’ Compensation Law § 87.02 (2001)).
In Boise Cascade Corp. v. Jackson, 997 So.2d 1026 (Ala.Civ.App.2007) (“Jackson I”), this court interpreted Ex paHe Drum-mond as altering the Bell test to require that a worker prove that the effects of an injury to a scheduled member cause or contribute to a permanent physical injury to other parts of the worker’s body in order to receive unscheduled disability benefits. This court issued Jackson I on May 4, 2007. On November 16, 2007, the supreme court granted Jackson’s petition for a writ of certiorari, reversed this court’s judgment, and held that the test adopted in Ex parte Drummond does not require proof of permanent physical injury to other parts of the body. Ex parte *389 Jackson, 997 So.2d 1038 (Ala.2008). On remand, this court, on May 2, 2008, affirmed the judgment awarding permanent-total-disability benefits to Jackson based on the altered-gait theory asserted by Jackson. Boise Cascade Corp. v. Jackson, 997 So.2d 1042 (Ala.Civ.App.2008) (“Jackson II ”).
The trial court entered its original judgment in this case in June 2007, between the date this court issued its opinion in Jackson I and the date the supreme court issued its opinion in Ex parte Jackson. In the June 2007 judgment, the trial court determined that only the 2004 fall had caused the employee’s hip and back pain. In Graben, supra, this court noted that some evidence in the record indicated that the employee’s altered gait had caused or contributed to the employee’s hip and back pain, while other evidence linked those symptoms to the April 2004 fall. We concluded that the trial court had resolved the conflicting evidence on the source of the hip and back problems by attributing them to the 2004 fall. 18 So.3d at 410-11. This court further held that, because the employee had not filed a cross-appeal, under the law-of-the-case doctrine, we were bound by the trial court’s finding that the 2004 fall had caused the employee’s hip and back pain. 18 So.3d at 410. Accordingly, this court held that the award of unscheduled benefits could not be affirmed on the basis of the evidence supporting an altered-gait theory. 18 So.3d at 413.
On remand, although this court had directed the trial court to determine solely whether the pain in the employee’s right knee totally, or virtually totally, disables the employee, 18 So.3d at 416, see Travis v. Travis, 875 So.2d 1212, 1214 (Ala.Civ. App.2003) (“[0]n remand, ‘ “the trial court’s duty is to comply with the appellate mandate ‘according to its true intent and meaning, as determined by the directions given by the reviewing court.’ ” ’ ” (quoting Ex parte Jones, 774 So.2d 607, 608 (Ala. Civ.App.2000), quoting in turn Walker v. Carolina Mills Lumber Co., 441 So.2d 980, 982 (Ala.Civ.App.1983), quoting in turn Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala.1983))), the trial court revised its findings of fact to support an award of unscheduled benefits under the altered-gait theory. In its revised judgment, the trial court reasoned that it had not addressed the effect of the employee’s altered gait on his hip and back in the original judgment because, at that time, it was bound by the opinion in Jackson I, which required additional evidence indicating that the altered gait had caused a permanent physical injury to those areas of the employee’s body. The trial court stated that if Ex parte Jackson and Jackson II had been available for its review in June 2007, it would have considered the effects of the employee’s altered gait on his hip and back. Based on the legal standard set out in those latter opinions, the trial court stated that it
“now specifically finds that while the employee injured his right shoulder and back as a result of the fall of April 3, 2004, he also has suffered an altered gait because of the right knee injury and that has caused or contributed to cause his lower back and hip problems.”
The trial court also found that the effects of the employee’s right-knee injury interfere with the normal functioning of the employee’s hip and low back. The trial court then concluded that the employee would be entitled to unscheduled disability benefits pursuant to the altered-gait theory.
The trial court’s reasoning contradicts this court’s analysis in Graben. In Gra-ben, this court concluded that the trial court had already addressed the source of the employee’s hip and low-back problems *390 and had ascribed those problems to the 2004 fall. 18 So.3d at 410-11. The employee argues that our discussion on that point was dicta; however, that discussion was essential to our decision that the original judgment could not be affirmed on the altered-gait theory despite the trial court’s failure to rely on that theory in its original judgment. 18 So.3d at 413.
Under the “law of the case” doctrine, ‘“[t]he issues decided by an appellate court become the law of the case on remand to the trial court, and the trial court is not free to reconsider those issues.’” Travis v. Travis, 875 So.2d at 1214 (quoting Ex parte S.T.S., 806 So.2d 336, 341 (Ala.2001)). “[W]hatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987). The law-of-the-case doctrine “will not permit the trial court to reverse itself.” Quimby v. Memorial Parks, Inc., 835 So.2d 134, 135 (Ala.2002). The doctrine also prevents a trial court from entering, on remand, a judgment that would “ ‘render meaningless the decision of the [appellate court] in the first appeal.’ ” Alfa Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 684 So.2d 1295, 1302 (Ala.1996). In this case, the facts on which the trial court based its original judgment did not change, only its assessment of those facts changed.
Although we recognize that an intervening change in the law may warrant deviation from the law-of-the-case doctrine, see Ex parte Discount Foods, Inc., 789 So.2d 842, 846 n. 4 (Ala.2001), the change generally must be such that the original decision is now clearly erroneous due to reliance on the old law. See 18B Wright et al., Federal Practice & Procedure: Jurisdiction 2d § 4478 n. 59 (2002). In this case, on remand, the trial court indicated that it did not apply the altered-gait theory in its original judgment because of the holding in Jackson I; however, the trial court was required to set out all of its factual findings and conclusions of law relevant to the issues litigated by the parties in its original judgment. See Ala. Code 1975, § 25-5-88. Nowhere in that judgment did the trial court indicate that it had declined to award the employee unscheduled benefits based on the altered-gait theory due to this court’s decision in Jackson I. Rather, as we concluded in Graben, the judgment reveals only that the trial court did not apply the altered-gait theory because it determined, as a matter of fact, that the employee’s hip and low-back problems resulted solely from the 2004 fall.
Moreover, the changes to the law made in Ex parte Jackson and Jackson II do not affect the correctness of that factual finding. Although the employee had already developed an antalgic gait before April 3, 2004, a great deal of the medical and other evidence indicates that the employee did not complain of hip problems until after the 2004 fall and that his severe back pain and associated symptoms did not begin until after that fall. Substantial evidence continues to support the factual determination that the 2004 fall caused the employee’s hip and back problems. The changes in the law announced in Ex parte Jackson and Jackson II do not in any manner render the original factual findings clearly erroneous.
Based on the foregoing reasoning, we reverse that portion of the trial court’s judgment on remand purporting to award the employee permanent-total-disability benefits based on the altered-gait theory.

*391
The Pain Exception

As explained above, in Bell v. Driskill, supra, our supreme court stated the rule that injuries to scheduled members affecting other unscheduled parts of the body fall outside the schedule. Based on that test, when the injury causes pain wholly within the scheduled member, the schedule remains the exclusive remedy. However, the Bell court further declared that the schedule would not apply when “the injury causes an abnormal and unusual incapacity with respect to the member.” 282 Ala. at 646, 213 So.2d at 811. Based on that so-called “second prong” of the Bell test, see Ex parte Drummond, 887 So.2d at 834 n. 10, this court issued numerous opinions affirming unscheduled compensation awards on the basis of lingering and disabling pain isolated to a scheduled member. See, e.g., Gold Kist, Inc. v. Casey, 495 So.2d 1129 (Ala.Civ.App.1986); and Republic Steel Corp. v. Kimbrell, 370 So.2d 294 (Ala.Civ.App.1979).
In Ex parte Drummond, our supreme court determined that this court had unduly expanded the intended reach of the Bell test by, among other things, deviating from the schedule on the basis of pain contained entirely within a scheduled member. 837 So.2d at 834-35. The Drummond court abolished the second prong of the Bell test, 837 So.2d at 834 n. 10., overruled our caselaw relying on isolated pain as a ground for avoiding the schedule, 837 So.2d at 834-35, and restated the test for distinguishing scheduled injuries from unscheduled injuries, as set out above.
Although the body of the opinion in Ex parte Drummond appeared to clarify that pain contained wholly within a scheduled member would no longer take an injury outside the schedule, in footnote 11 the Drummond court stated:
“This case does not present a situation in which the pain, although isolated to the scheduled member, causes a disability to the body as a whole. We recognize that pain can be totally, or virtually totally, debilitating, but this case does not present such a situation; therefore, we decline to address that situation here.”
837 So.2d at 836 n. 11. Footnote 11 expressly recognizes that, in some “situation,” pain may cause a disability to the body as a whole although emanating solely from a scheduled member. The language in the footnote further implies that such a “situation” occurs when pain isolated to a scheduled member is “totally, or virtually totally, debilitating” to the worker. Hence, in Graben, supra, this court adopted that language as the test for determining when pain isolated to a scheduled member transforms that impairment into an unscheduled injury. 18 So.3d at 416.[1]
This court phrased the test as requiring proof of total, or virtually total, physical disability because Ex parte Drummond holds that an injury to a scheduled member may not be treated as unscheduled based on evidence of the vocational disability arising therefrom. 837 So.2d at 834 n. 8. In Advantage Sales of Alabama, Inc. v. *392 Clemons, 36 So.3d 517 (Ala.Civ.App.2008), this court held that a trial court must first determine whether an impairment meets the Ex parte Drummond test for treatment as an unscheduled injury before considering evidence of vocational disability. Moreover, to prove a total vocational disability, a covered worker does not have to prove entire physical disability. See Brunson Milling Co. v. Grimes, 267 Ala. 395, 103 So.2d 315 (1958); Mead Paper Co. v. Brizendine, 575 So.2d 571 (Ala.Civ.App.1990). Accordingly, the Drummond court obviously did not intend that the schedule could be circumvented on the basis that the employee has sustained a total, or virtually total, vocational disability. See Ex parte Baggett, 1 So.3d 1021, 1021-22 (Ala.2008) (Murdock, J., concurring specially) (pointing out that using evidence of a total vocational disability in order to circumvent the schedule would “effectively unwind” the holding in Ex parte Drum-mond). Rather, the Drummond court had to be referring in footnote 11 to physical disability.
Ex parte Drummond further instructs this court that the pain exception should be construed strictly. As this court has previously recognized, the Drummond court intended “a reining in ... of the manner of computing benefits where the only impairment claimed is to a scheduled member.” Ex parte Fort James Operating Co., 905 So.2d 836, 844 (Ala.Civ.App. 2004). Ex parte Drummond created a “more stringent test” for circumventing the legislated remedy. Alabama Workmen’s Comp. Self-Insurers Guar. Ass’n, Inc. v. Wilson, 993 So.2d 451, 453 (Ala.Civ. App.2006). Accordingly, any judicially created exception to the schedule must be applied narrowly. See Ex parte Addison Fabricators, Inc., 989 So.2d 498 (Ala.2007). The pain exception should not be applied so that it swallows the rule of exclusivity and returns the law to its pre-Ex parte Drummond state in which the schedule almost never controlled the compensation due for an impairment to a listed member. See 1 T. Moore, Alabama Workers’ Compensation § 14:16 (Supp. 2009). Just recognizing a pain exception to the schedule injects uncertainty into an area purposefully intended to be certain, see Ex parte Addison Fabricators, Inc., 989 So.2d at 504 (recognizing that the legislature instituted the schedule to minimize controversy and to assure speedy payment of benefits); the test should not be applied in such a manner as to add to that uncertainty and to lead to the type of litigation the legislature specifically intended to avoid when it created the schedule. See id. In keeping with Ex parte Drummond and the legislative intent behind the schedule, the test is not satisfied by evidence that the worker experiences “abnormal,” constant, and severe pain even when not using the affected member, see Johnson, 984 So.2d at 1144-45; rather, it requires competent proof that whatever pain the worker experiences completely, or almost completely, physically debilitates the worker.
In determining whether the evidence satisfies this exceedingly high standard, a trial court must consider all legal evidence bearing on the existence, duration, intensity, and disabling effect of pain in the scheduled member, including its own observations. See generally Nance v. Nance, 640 So.2d 953 (Ala.Civ.App.1994). That evidence would include the worker’s own subjective complaints, even if those complaints are unsupported by or contradict the medical evidence. See generally Unexcelled Mfg. Corp. v. Ragland, 52 Ala. App. 57, 289 So.2d 626 (Civ.1974). Although Justice Parker advocated in his writings concurring specially in Ex parte Masterbrand Cabinets, Inc., 984 So.2d at 1151, and in Ex parte Jackson, 997 So.2d *393 at 1042, that workers should be required to provide objective evidence that disabling pain exists in order to prove that type of pain contemplated by footnote 11 in Ex parte Drummond, a majority of the supreme court did not adopt that position. Hence, this court rejects the employer’s contention that the law should require a worker’s subjective complaints of pain to be supported by objective evidence. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.1991) (requiring Social Security disability claimants to support subjective complaints of pain with “(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain”).
In this case, the record, when viewed in a light most favorable to the findings of the trial court, see Ex parte Southern Energy Homes, 873 So.2d 1116, 1122 (Ala.2003), contains substantial evidence showing that the employee had experienced virtually unremitting pain in his right knee since he injured his knee on July 10, 1997. That pain did not prevent the employee from performing strenuous manual labor for the next four years until the plant where the employee worked closed; however, the pain had worsened to the point that, at the time of trial in May 2007, the employee was suffering constant throbbing, sometimes sharp, right-knee pain on a scale of 7 out of 10, which pain would increase in reaction to wet and cold weather conditions and with any attempt to engage in physical activities. Due to that pain, the employee has been restricted from lifting greater than 20 pounds occasionally and greater than 10 pounds frequently, running, bending at the knee, crawling, squatting, stooping, climbing ladders, and sitting, standing, or walking for prolonged periods of time. The pain also disturbs his sleep.[2] The employee remains able to walk, but the pain in his right knee slows and alters his natural gait and affects his balance.[3] To obtain some relief from his pain, the employee limits his physical activities, takes the medications Mobic and “Neopectin,”[4] and lays down two to three hours per day.[5]
However, the record contains no evidence to support the trial court’s findings that the employee needs assistance dressing himself, bathing, and preparing meals, and that the employee cannot shop for groceries. The employee himself testified that he dresses himself, although more slowly than he once did, and that he helps *394 his wife shop for groceries. The employee presented no evidence as to his bathing and meal preparation. The record also does not contain any evidence supporting the trial court’s finding that the employee spends the majority of time in bed or in a recliner on bad days when his pain is at its greatest.
Although the right-knee pain significantly reduces the ability of the employee to physically function, it does not virtually totally physically disable him, as the trial court found. The pain does not completely, or almost completely, prevent the employee from using his upper extremities, lifting light objects, driving, walking, climbing the stairs leading into his home, sitting, standing, occasionally fishing, or traveling.[6] The employee testified that he regularly spends his days observing his sons’ farming activities,[7] meeting and eating lunch with an old friend, and taking care of his three grandchildren. Despite his right-knee pain, the employee retains significant ability to perform physical activities.
Based on the strict test we adopted in Graben, the pain in the employee’s right knee does not qualify him for unscheduled disability benefits. We therefore hold that the trial court erred in treating the employee’s impairment to his right leg as an unscheduled injury to his body as a whole. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
PITTMAN and MOORE, JJ., concur specially, with writings.

. So phrased, the test differs materially from the test advocated in Masterbrand Cabinets, Inc. v. Johnson. Thus, those cases applying and distinguishing Johnson are no longer applicable or instructive. "The cases decided after Johnson, but before Graben, .... do not provide us with precedential value regarding the decision to award benefits outside the schedule based on debilitating pain” under the Graben test. Wehadkee Yam Mills v. Harris, 31 So.3d 150, 159 (Ala.Civ.App.2009). Hence, we do not consider the employer’s argument in this case that, because the evidence does not satisfy the now-discarded Johnson test, it is necessarily insufficient to meet the Graben test.

. In addition to his right-knee pain, the employee informed Dr. Shelinder Aggarwal on July 17, 2006, that he continues to suffer pain rated as 7 out of 10 in his right shoulder, lower back, left hip, and left leg due to the injuries received in his noncompensable 2004 fall. At trial, the employee testified that the pain in his right leg was worse than the pain in his left leg.

. The employee has been using a cane, crutch, or walking stick since 2005, but the employee informed Myrtice Carr, the employer's vocational expert, that he relies on those assistive devices to compensate for a left-foot-drop condition caused by his noncompensable back injury.

. Mobic is the brand name for meloxicam, a nonsteroidal anti-inflammatory medication. Myrtice Carr, the employer’s vocational expert, testified that she was unable to identify “Neopectin” in medical literature. The employee testified that he also takes gabapentin and Lyrica for nerves and burning in his feet. Those problems are unrelated to the right-knee injury.

. The employee testified that he lays down two to three hours per day to obtain some relief for pain in both his back and his right knee.

. In questioning Myrtice Carr, the employer's vocational expert, the employee’s attorney indicated that Carr had erred in documenting that the employee had recently taken a Las Vegas vacation, arguing that the employee had never been to Las Vegas; however, Carr maintained that the employee told her he had gone to Las Vegas, and no witness testified to the contrary.

. At one time, the employee owned and operated a cattle farm, but he testified that he had given that farm to his sons "several years ago.”