After Remand from the Alabama Supreme Court
This case involves whether Tommie L. Jackson ("the employee") is entitled to *Page 1044 
workers' compensation benefits outside the benefits provided in the schedule listed in Ala. Code 1975, § 25-5-57. On original consideration of this case, this court determined that
 "the employee may not recover non-scheduled disability benefits in this case on the basis of complaints of back pain in the absence of a showing that the injury to his foot had caused a permanent physical injury to his back."
Boise Cascade Corp. v. Jackson, 997 So.2d 1026, 1036
(Ala.Civ.App. 2007) ("Jackson I"). On certiorari review, our supreme court reversed that decision, essentially holding that there is no "requirement for a permanent physical injury to other parts of the body in order to take the injury out of the schedule. . . ." Ex parte Jackson,997 So.2d 1038, 1040 (Ala. 2007). The case was remanded "for further proceedings consistent with [the supreme court's] opinion."997 So.2d at 1040. Based on that directive, we review again the judgment of the trial court awarding the employee non-scheduled, permanent-total-disability benefits.
In Ex parte Drummond Co., 837 So.2d 831 (Ala. 2002), the supreme court adopted the following test:
 "`[I]f the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.'"
837 So.2d at 834 (quoting 4 Lex K. Larson, Larson'sWorkers' Compensation Law § 87.02 (2001)). Based on the holding in Ex parte Jackson, supra, in order to prove that the effects of the injury to the scheduled member "extend to other parts of the body and interfere with their efficiency," the employee does not have to prove that the effects actually cause a permanent physical injury to nonscheduled parts of the body. Rather, the employee must prove that the injury to the scheduled member causes pain or other symptoms that render the nonscheduled parts of the body less efficient.
Under Alabama's workers' compensation law, the determination of whether an injury to one part of the body causes symptoms to another part of the body is a question of medical causation.See Honda Mfg. of Alabama, LLC v. Alford, [Ms. 2060127, Oct. 26, 2007] ___ So.3d ___, ___ (Ala.Civ.App. 2007). To prove medical causation, the employee must prove that the effects of the scheduled injury, in fact, contribute to the symptoms in the nonscheduled parts of the body. Seegenerally Ex parte Valdez, 636 So.2d 401, 405 (Ala. 1994). Therefore, in order to decide whether the employee has satisfied the first prong of the Drummond test, we must determine whether substantial evidence supports the trial court's finding that the injury to the employee's foot altered the employee's gait so as to cause pain in the employee's back.[1] See Ala. Code 1975, § 25-5-81(e)(2). "Substantial evidence" is "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc.,680 So.2d 262, 268 (Ala. 1996) (quoting West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)).
We must also determine whether the employee has established the second prong of the Drummond test by adequately proving that the effects of his foot injury *Page 1045 
have interfered with the efficiency of his back. To "interfere" means "to interpose in a way that hinders or impedes." See Merriam-Webster's Collegiate Dictionary
652 (11th ed. 2003). "Efficiency" refers to effective functioning. Id. at 397. On appeal, we review the record to determine whether the employee presented substantial evidence indicating that the effects of his foot injury hinders or impedes the effective function of his back.
As summarized more thoroughly in our opinion in JacksonI, 997 So.2d at 1028, the employee had experienced previous disabling lower back problems in 2000 that had caused him to miss work for three or four months until January 2001. According to the employee, he began to experience different back pain at some point after his October 30, 2001, work-related accident. The employee testified that he had informed Dr. John McAndrew, his authorized treating physician, about his back pain, but that Dr. McAndrew had not documented the complaints until April 3, 2002, about three weeks after he had placed the employee at maximum medical improvement for his foot injury. Based in part on his recollection that the employee had not reported any back problem until over five months after the accident and in part on his belief that the employee's complaints of back pain were not credible, Dr. McAndrew opined that the employee's back problem bore no relationship to the foot injury. The doctor later testified that all the permanent effects of the employee's foot injury were confined to the area of the left heel below the ankle.
On October 29, 2002, Dr. McAndrew re-examined the employee and found no evidence of an altered gait even when the employee walked barefoot without orthotic aids. Therefore, the doctor released the employee to return to work with physical and hourly restrictions. The employee testified that his back constantly hurt him while working, even though he was taking his pain medication. After working for a year and a half, the employee reported to a counselor, Donald Blanton, that he experienced daily pain in his foot and back. The counselor documented that the employee was "strong other than his left foot and ankle."
On May 6, 2004, the employee demonstrated in a functional-capacities evaluation ("FCE") the ability to work in medium to heavy labor. Before and during the FCE, the employee complained of left-foot pain, but he did not have any "secondary complaints." The examiner also noted that the employee had accomplished all tasks with orthotic aids and that his "gait was within normal limits." The examiner further reported that the range of motion of the employee's back and muscle testing yielded normal results. Based on the results of this FCE, Dr. McAndrew increased the employee's work hours to eight hours per day with breaks. The employee testified that the new work schedule had worsened his pain.
The employee testified that at some point before March 11, 2005, he had visited an unauthorized physician seeking help with his worsening foot and back pain. That physician referred the employee to Dr. William Fleet, a neurologist. The employee informed Dr. Fleet that he had been having constant lower-back and left-knee pain since his work-related accident.[2] After a variety of diagnostic tests, Dr. Fleet determined that the employee had *Page 1046 
no permanent disability to his lumbar spine or to his left knee. On June 17, 2005, after the employee had been excused by Dr. Fleet from working for three months, the doctor prescribed the employee a back brace and a knee brace and returned him to work with increased physical restrictions and a modified schedule. The employer could not accommodate the new restrictions, so the employee did not return to work. Dr. Fleet thereafter placed the employee at maximum medical improvement with no impairment to the back or the knee.
In his deposition, Dr. Fleet opined that, based on the employee's history, the employee's left-heel injury caused the employee's left-knee and lower-back pain. On direct examination, Dr. Fleet testified that the employee's pain in his left knee and lower back was consistent with an injury from jumping from a height. Later, he testified that he had commonly seen patients develop knee and lower-back pain with foot injuries. On cross-examination, Dr. Fleet testified that he suspected the employee may have traumatized his left knee in the initial accident but that, because the employee had had a normal MRI, any residual left-knee pain resulted from an altered gait. The doctor admitted that he had checked the employee's gait on every visit and had found it to be normal. However, the employee had told the doctor that he would start limping after standing or walking for more than 15 to 30 minutes. Ultimately, Dr. Fleet theorized that the employee's back pain resulted from his walking with an altered gait but that his theory might be incorrect because the employee had continued to complain of back problems even after he quit working. Dr. Fleet conceded that Dr. McAndrew was in a better position to determine if the employee's back injury related to the heel injury, but he would not outright defer to Dr. McAndrew's position on the subject.
On September 27, 2005, the employee underwent a second evaluation by Blanton. The employee told Blanton he was experiencing constant pain in his lower back and that the pain was affecting his ability to bend and twist. At trial on October 13, 2005, the employee testified that his left-knee pain causes him to change his gait. The employee also stated that he believes his foot injury led to his back pain because he did not have the same type of back pain before his accident. The employee said that he experiences pain in his lower back near the belt level every day, that the pain in his back is less than the pain in his left heel, but is still present,[3] and that the pain in his back persists even when he takes his medication. He also testified that his lower-back pain affects his ability to bend and twist from side to side.
Based on the above evidence, a fair-minded person in the exercise of impartial judgment could conclude that the injury to the employee's left foot had caused the employee pain in his left knee that altered his gait, which, in turn, caused the employee to experience lower-back pain that interfered with his normal functioning. Although the record contains a great deal of evidence indicating that the employee did not walk with an altered gait, Dr. Fleet testified that the employee had told him he would limp after walking for 15 or 30 minutes, and the employee testified at trial that his left-knee pain caused him to change his walk. A fair-minded person, exercising impartial judgment, could conclude from that testimony that the employee's left-heel injury resulted in an altered gait. *Page 1047 
On the key issue whether the employee's altered gait caused the employee's back pain, Dr. Fleet testified that he believed that it did. Although Dr. Fleet's testimony is not stated as strongly as it could be, and although he believed that Dr. McAndrew could better make that determination, Dr. Fleet did not retract his opinion. The employee also testified that ever since his accident he had experienced back pain that was different from the back pain he had experienced before the work-related accident. This circumstantial evidence suggests a causal connection between the foot injury and the employee's back pain. See Alamo v. PCH Hotels Resorts,Inc., 987 So.2d 598, 603 (Ala.Civ.App. 2007) (Moore, J., concurring specially). Based on the evidence, a fair-minded person, exercising impartial judgment, could conclude that the employee's altered gait caused the pain in the employee's back.
Finally, the employee informed Blanton and testified at trial that his back injury adversely affects his ability to bend and twist from side to side. That testimony illustrates that the employee's back pain interferes with the efficiency of the employee's back. At a minimum, the trial court, acting as a fair-minded fact-finder, could have concluded in the exercise of impartial judgment that the function of the employee's lower back had been hindered.
The evidence contained in the record meets the definition of "substantial evidence."
 "If [substantial evidence supports the trial court's findings of fact], then the judgment of the trial court must be affirmed. The appellate court is prohibited from reweighing the evidence, i.e., it is not to consider whether in its opinion the `substantial evidence' before the trial court might have caused the appellate court — if it had been the fact-finder — to find the facts to be different from what the trial court found them to be."
Ex parte Staggs, 825 So.2d 820, 822 (Ala. 2001). We cannot substitute our judgment for that of the trial court.Ex parte Kmart Corp., 812 So.2d 1205 (Ala. 2001). We may not reverse a judgment simply because we would have decided the facts differently than the trial court. Id. Based on these principles of appellate review, we have no choice but to conclude that the trial court did not err in finding that the effects of the employee's foot injury extend to and interfere with the efficiency of his back. Therefore, we must affirm the judgment awarding the employee nonscheduled, permanent-total-disability benefits.
As set out in Jackson I, we reverse the judgment of the trial court insofar as it failed to reduce the employee's disability benefits to account for the attorney fees awarded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
[1] Although the employee also claims his left-foot injury extended to his left knee, we previously held that any effect on the left knee would not take the case out of the schedule.Jackson I, 997 So.2d at 1032 n. 8.
[2] As pointed out in Jackson I, "[t]he employee testified that he had complained of left-knee pain since the accident but that his complaints went undocumented. In his deposition, however, the employee indicated that he had injured only his left heel and his back as a result of the work-related accident." 997 So.2d at 1030 n. 6.
[3] In his December 2002 deposition, the employee testified that he experienced pain in the middle/upper part of his back above his belt line.