MOORE, Judge.
West Fraser, Inc. (“the employer”), appeals from an order of the Lee Circuit Court (“the trial court”) determining, among other things, that Winded Caldwell, Sr. (“the employee”), suffered an injury that is compensable under the Alabama Workers’ Compensation Act (“the Act”), Ala.Code 1975, § 25-5-1 et seq. We reverse.

Facts

The employee testified as follows. At the time of the trial he was 46 years old and had been working for the employer or its predecessors for over 20 years. He had experienced back pain before, but he had never been diagnosed with a herniated disk or a need for back surgery. Although the employee’s time card indicates that he was off work on December 16, 2009,[1] the employee denied that he had injured his back in any manner at home on that day or in the preceding week.
On December 17, 2009, the employee clocked in for work at 4:28 a.m. and was assigned to change the “knives” in a mulching machine. The employee testified that, after carrying a 50-pound box of knives up a flight of stairs, he started back down the stairs to retrieve a second box when he felt a “pinch” in his back. He felt a second pinch in his back while walking down the stairs after removing an 80-pound screen from the mulching machine, and that second pinch caused him to drop the screen. After resting for 15 minutes, he proceeded to change out about half the knives when he felt a third pinch in his back. At that point, he ceased working and sought out Bobby Hill, his supervisor, in order to immediately report the injury as he understood the employer required. While looking for Hill, the employee telephoned his wife, Rhonda, to inform her of his back injury. While still on the telephone with Rhonda, the employee found Hill and informed Hill that he had been injured changing the knives in the mulching machine and that he needed medical care. According to the employee, Hill told him to go to the doctor and to keep him informed of what was going on; Hill also told him that he would take care of his time card because the employee was unable to walk up the steps. Rhonda then came to pick the employee up. Two of the employee’s coworkers helped him into his wife’s automobile, and she drove him to Auburn Urgent Care at approximately 8:00 a.m. The employee testified that he did not know that the employer had designated Auburn Urgent Care as its primary-care provider for work-related injuries and that he had chosen that facility because he did not have a personal doctor at the time.
Wilbert “Butch” McCants, a coworker, testified that, on December 17, 2009, the employee had indicated that he did not want to change the knives because the *891 employee regularly worked as a crane operator. McCants said that the employee did not have to retrieve a box of knives in order to change the knives because the job only required that the knives already in the machine be “flipped.” McCants was working approximately 15 feet away from where the employee was working, but McCants did not see the employee get a box of knives. He also did not hear the employee express that he was injured or in pain. Instead, McCants testified, the employee simply stopped working and walked off,, passing directly by McCants. Ultimately, McCants finished flipping the knives, which he described as “not a hard thing to do.” He testified that he had not noticed any boxes of knives nearby as he completed the task.
Hill testified that, although the employee had informed him on December 17, 2009, that he was going to the doctor because his back “had been bothering him,” the employee had not, at that time, informed Hill that his injury had arisen from work activities. If the employee had, Hill testified, he would have taken the employee to the human-resources manager to obtain a medical appointment and to fill out a first report of injury, that Hill or the employer’s safety director would have taken the employee to the doctor, and that Hill would have initiated an investigation of the alleged injury. Hill admitted that it was unusual for the employee, who had a good attendance and safety record, to leave work early like he had on December 17, 2009; however, Hill did not specifically inquire of the employee how he had injured his back, and Hill admitted that he did not know of any other possible cause of the employee’s back injury.
Rhonda testified that, on December 17, 2009, the employee telephoned her and informed her that he had been hurt at work and requested that she come pick him up. Rhonda, who married the employee in May 2007, stated that the employee had never complained of back pain to her and that he was not one to complain or to miss or leave work. Rhonda said that, when the employee told her of the injury, she asked the employee if he had reported his injury to a supervisor and that he had stated that he had. According to Rhonda, while she was still on the telephone with the employee, she overheard the conversation between the employee and Hill. Rhonda stated that the employee had informed Hill “that he had gotten hurt and needed medical treatment.”[2] However, in his deposition, the employee testified that he had talked to Rhonda before he had conversed with Hill. Rhonda testified that, when she arrived to pick up the employee, three of his coworkers, not two as the employee testified, helped him into her automobile while she stood by in disbelief seeing the employee’s weakened condition.
The medical records from Auburn Urgent Care, dated December 17, 2009, state that the employee complained chiefly of back pain radiating down his right leg “x 1 week” and that his pain was “aggravated by movement no inj.” The employee denied that he had made those statements. The employee and Rhonda both testified that they had informed the medical providers at Auburn Urgent Care that the employee had injured his back at work, and they had no explanation for why the records did not reference a work injury. Rhonda further testified that the employee *892 had been in pain, that she had done most of the talking, and that she had mentioned the work injury and the fact that the employee had just left work to the medical providers. The records indicate that the employee was diagnosed with a lower-back strain and muscle spasms and that he was prescribed medication and told to rest from work for two days.
McCants testified that when he left work on December 17, 2009, he noticed the employee’s truck still parked outside, so he telephoned the employee. In their ensuing conversation, McCants did not ask the employee how he had been injured and the employee, who had no responsibility to report work-related injuries to McCants, did not state that he had hurt his back at work. McCants testified that the employee had complained about his back for “way more” than five years but that the employee had never said he had injured his back at work. McCants conceded that he had no knowledge that the employee had injured his back in some other way.
The employee testified that he attempted to contact Hill or “the front office” numerous times between December 17 and December 21, but no one answered his telephone calls. After reviewing certain telephone records, Hill confirmed that the employee had, in fact, made the calls. The employee also sent a text message to James “Chris” Baker, a supervisor working under Hill, but he did not receive a response. Baker testified that he had been out of his cellular-telephone provider’s service area and had not received the text message for some time. The message stated that the employee was out on medical leave and that Hill “knew about it.” Baker testified that because it appeared to him that the employee had been able to do his job fully before December 17, 2009, he had wanted to find out what had happened. Baker telephoned the employee, who told Baker that he had hurt his back and that it had been bothering him for several weeks. Although Baker testified that he had never known the employee to tell him an untruth, he also testified that he had no reason to believe the employee had been hurt at work. If the employee had told Baker that he had injured his back while at work, Baker testified, he would have immediately commenced an investigation. Baker also admitted that he had not learned of any other injury to the employee’s back. Baker additionally testified that he had heard rumors that the employer had paid bonuses for “less reportable injuries,” but, he testified, he had never received such a bonus.
The employee testified that, on December 19, 2009, he went to the emergency room at East Alabama Medical Center because his pain was increasing and because the pain medication he had been given at Auburn Urgent Care was not working.[3] Records from that visit show that the employee complained of lower-back pain radiating down his right leg at a level of intensity of “3” and that he “denie[d] injury.” The employee and his wife, Rhonda, testified that they had also told the medical providers at East Alabama that the employee had injured his back at work. The employee testified that he did not know of any reason why the providers at East Alabama or the providers at Auburn Urgent Care had “misquoted” him. The employee received a diagnosis of sciatica and was prescribed additional medication, along with a recommendation to return to his primary-care physician within two days.
*893 The employee visited Auburn Urgent Care a second time on December 21, 2009; the medical record from that date references “injury 12/17.” The next day, at 10:30 a.m., the employer received a letter, via facsimile transmission, from the employee’s counsel, notifying the employer that the employee claimed that he had injured his back while working on December 17, 2009. Hill testified that he first learned that the employee was claiming that his back condition resulted from a work-related injury upon reviewing that letter.
On December 23, 2009, the employee was called into work for a meeting. On that date, the employer completed a first report of injury in which it summarized the statement of the employee as relating his prior back pain to an undocumented 2004 or 2005 work-related injury and as asserting that the back pain had been aggravated on December 17, 2009, while he was changing the knives. The employer’s workers’ compensation representative contacted Auburn Urgent Care on December 23. The medical records from Auburn Urgent Care state “that there is nothing from either [the December 17 or December 21] visit[s] stating that this was [related to workers’ compensation] or that there was an injury.”[4]
The employee testified that the employer originally agreed to send him to an orthopedic surgeon but that the appointment had later been canceled and, instead, the employee had been asked to attend a second meeting with the employer. According to the employee, at the second meeting on January 7, 2010, he was told that his claim had been denied by the employer’s workers’ compensation carrier. In addition, the record contains a written reprimand from the employer, counseling the employee for failing to immediately notify the employer of the alleged December 17, 2009, injury. Subsequently, the employer notified the employee that he could return to work if he was given a full medical release, which the employee never obtained. The employee has not returned to any work since December 17, 2009.
On March 24, 2010, the employee returned to East Alabama. The medical records from that visit indicate that the employee denied any new injury, instead relating his back pain to his December 17, 2009, injury; however, he was seeking emergency care for pain at a level of intensity of “8” and for the onset of new radicu-lar symptoms running down his left leg. The medical records state that the employee had expressed concern that his previous problems all related to his right leg. The employee received treatment for sciatica and was discharged with instructions to follow up with an orthopedic surgeon. The employee testified at trial that he had failed to inform the employer of that hospital visit in his responses to interrogatories and in his pretrial deposition.
On August 27, 2010, the employee began treatment with Dr. David Scott, an orthopedic surgeon, whose records from that date indicate that the employee reported that he had been injured at work on December 17, 2009.[5] Dr. Scott testified by deposition that the employee was suffering from a herniated disk and aggravated degenerative disk disease at L5-S1. According to Dr. Scott, those injuries *894 were consistent with the lifting incident the employee told him he had experienced at work; Dr. Scott had expressed the same opinion in his response to a November 2, 2010, letter he had received from the employee’s counsel. Dr. Scott testified that, at the time he responded to that letter, he had had no reason to disbelieve the employee, whose credibility he had never doubted; however, when shown the records from Auburn Urgent Care and East Alabama, which indicated that there had been no injury, Dr. Scott testified that it appeared to him that the employee had not been truthful and that, based on the discrepancies in the medical records, he could not say with any medical certainty that the employee had suffered a work-related injury. Dr. Scott testified that, although the injury was consistent with the report of a work injury, a similar injury could occur in any number of ways, including just from brushing one’s teeth or changing bodily positions. As a result, he testified, he could not attribute any of the employee’s impairment to the December 17, 2009, incident.

Procedural History

The employee filed a complaint against the employer and a number of fictitiously named defendants on January 22, 2010, requesting medical expenses and permanent disability benefits under the Act. The employer filed an answer on February 17, 2010, asserting a number of defenses. On September 8, 2010, the employee filed a motion requesting a hearing on the compensability of his injuries. See Ex parte Publix Super Markets, Inc., 963 So.2d 654 (Ala.Civ.App.2007) (establishing procedure to be followed to resolve disputes as to compensability before award of permanent benefits).[6]
On March 8, 2011, the trial court held an ore tenus hearing. At the close of that hearing, the trial court stated that it considered the employee’s long work history the most valuable piece of evidence to support his claim for workers’ compensation benefits. On March 21, 2011, the trial court entered a judgment that stated, in pertinent part:
“The Court heard testimony from several witnesses regarding whether the [employee’s] injury was work-related. The testimony before the Court was that the [employee] was injured on December 17, 2009, while changing the ‘knives’ on a piece of equipment. He reported this injury to his supervisor and was driven to Auburn Urgent Care by his wife, as he was unable to drive his own vehicle due to the pain. Medical records offered reflected that there was no work-related injury. However, the [employee] and his wife testified that he told medical personnel that his pain was due to an injury at work and that the records were incorrect. The medical personnel who completed the medical reports did not testify at the hearing and were not deposed. Therefore, the Court was without the benefit of their testimony.
*895 “The Court finds that the [employee] and his wife are credible witnesses. The [employee] has a roughly 20-year work history with the [employer] or its predecessors and has been a model employee. The Court places a great deal of weight on the [employee’s] exemplary work history for the same employer.
“Having considered the testimony and evidence presented, as well as the arguments of counsel, the Court finds that the [employee] has met his burden of proof. Therefore, the [employer’s] Motion for Judgment as a Matter of Law is due to be denied. The Court finds that the [employee] has suffered a compensa-ble injury and is entitled to medical coverage as well as temporary total disability from the time of the accident.”
(Footnote omitted.)
The employer filed a notice of appeal to this court on April 26, 2011.

Discussion

In cases in which a worker claims a personal injury from a discrete accident arising out of and in the course of the employment, a trial court applies the preponderance-of-the-evidence standard.[7] See § 25 — 5—81(c), Ala.Code 1975. Like any fact-finder, a judge hearing a workers’ compensation case must consider all of the evidence, and, if faced with differing versions of events, the judge must attempt to reconcile those versions so that they speak the truth. See generally Knotts v. State, 686 So.2d 431, 463 (Ala.Crim.App.1995). When irreconcilable conflicts in the evidence emerge, however, a judge must determine which version of events more likely represents the truth and disregard that version which it determines is more likely false in light of common experience. See generally Hunt v. State, 642 So.2d 999, 1012 (Ala.Crim.App.1993). In reaching that decision, a judge necessarily should consider not only the candor and demean- or of the witnesses, but also the substance of the witnesses’ testimony and its inherent probability or improbability. See King v. Brindley, 255 Ala. 425, 430, 51 So.2d 870, 875 (1951).
Oh appeal, this court reviews the record to determine whether substantial evidence supports the factual findings of the trial court. § 25 — 5—81(e)(2). “Substantial evidence” is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989)); see also Ala.Code 1975, § 12-21-12(d). Because this court does not have the witnesses before it, this court, in deciding whether their testimony constitutes substantial evidence, cannot make any judgment as to their candor or demeanor. See Ex parte McInish, 47 So.3d 767, 777 (Ala.2008). However, as the following cases illustrate, this court can, upon a review of the totality of the evidence, determine that testimony purporting to link a worker’s injury to his or her employment is so implausible in *896 substance that a fair-minded person exercising impartial judgment would not reasonably rely upon that testimony to infer causation.
In Jackson Landscaping, Inc. v. Hooks, 844 So.2d 1267 (Ala.Civ.App.2002), this court reversed a judgment for a worker who claimed that he had ruptured a disk in his lower back in a work-related automobile accident. A supervisor and two of the worker’s co-employees testified that the worker had never reported that the accident had caused him back pain until he filed a claim for workers’ compensation benefits. 844 So.2d at 1271. Although the worker had been treated consistently for ankle problems from the date of the accident, the medical records did not relate any complaints of back pain until 16 months later. 844 So.2d at 1272. The worker testified that he had reported back pain to emergency-room personnel on the date of the accident and that he had received an injection for those symptoms. 844 So.2d at 1269. The detailed emergency-room records contradicted both of those statements, however, indicating, instead, that the worker had complained of a small laceration on his buttocks for which he had been given a local anesthetic. Id. At trial, the worker testified that the records must have contained a “ ‘misprint.’ ” Id. The worker also made several inconsistent statements at trial regarding the date his back pain actually began. 844 So.2d at 1270.
The trial court in Hooks concluded that the worker was not “‘making one thing up,’ ” 844 So.2d at 1272, indicating that it had found the worker’s testimony to be credible. The trial court further determined that men commonly fail to report pain to others and that the worker had “ ‘legitimately tried to go back to work and worked his hardest.’ ” Id. The trial court determined that the medical record of the laceration to the buttocks signified that the worker had injured his back and that the pain had just gotten “ “worse and worse’ ” ever since. Id. Noting that the trial court had misinterpreted an injury to the buttocks as an injury to the back, and emphasizing the multiple inconsistent statements made by the worker as to the onset of his back pain, this court reversed the judgment, finding it to be unsupported by substantial evidence. 844 So.2d at 1272-73.
In Ex parte Southern Energy Homes, Inc., 873 So.2d 1116 (Ala.2003), Emma Riddle, the worker, claimed that she had injured her back in a fall from a ladder in April 1996 and that she had immediately reported the injury to her supervisor; however, when she had asked to see a doctor for the alleged injury, the employer informed her that it had no knowledge of a work-related injury. 873 So.2d at 1117. Medical records from Riddle’s personal doctor showed no mention of the alleged accident or resulting back pain until long after the accident had allegedly occurred and after Riddle had filed a workers’ compensation claim. 873 So.2d at 1118. At trial, Riddle testified that her personal doctor had told her he had “ ‘forgot’ ” about her mentions of back pain. 873 So.2d at 1122. After much subsequent medical treatment, Riddle’s doctors found inconsistencies in Riddle’s complaints and the nature of her injury, as well as symptom magnification. 873 So.2d at 1123. They could testify only that it was possible that Riddle had injured her back as she claimed. 873 So.2d at 1122.
After the trial court awarded Riddle permanent-total-disability benefits, and this court affirmed that judgment without an opinion, see Southern Energy Homes, Inc. v. Riddle, 876 So.2d 529 (Ala.Civ.App.2002) (table), our supreme court reversed this court’s judgment of affirmance. See Ex parte Southern Energy Homes, Inc., *897 873 So.2d at 1123. The supreme court found that the only evidence indicating that the worker had injured her back in a fall from a ladder at work consisted of her own testimony, which, based on the totality of the evidence in the record, could not be considered substantial evidence. The court stated:
“This is not to say that a plaintiffs testimony alone can never constitute substantial evidence of medical causation, but rather that in this case the evidence as a whole weighs heavily against finding the plaintiffs testimony alone to be substantial evidence of medical causation.”
873 So.2d at 1122.
In G.UB.MK. Constructors v. Davis, 45 So.3d 1277 (Ala.Civ.App.2010), Howard Lee Davis, the worker, claimed that his left-hand injury extended into his neck, shoulder, and upper back and had caused a heart condition. His medical records contained no complaints of those problems. 45 So.3d at 1182. Davis could not explain why his physician did not document his alleged complaints. In discussing the similarities between that case and Hooks and Ex parte Southern Energy, this court stated:
“In this case, the employee could not explain the omission of the alleged complaints to Dr. Clark any better than did Hooks or Riddle. As in [Jackson Landscaping, Inc. v.] Hooks [, 844 So.2d 1267 (Ala.Civ.App.2002) ], no independent witness verified the complaints made by the employee. Even assuming the employee did complain to Dr. Clark as the employee testified, those complaints did not arise until over 28 months after the initial injury to the employee’s left hand and over 6 months after he last worked. The employee offered no evidence indicating that he had been experiencing the same pain when he was working and presumably using- his left hand more often. The medical testimony is even stronger in this case than in Hooks and [Ex parte ] Southern Energy Homes[, Inc., 873 So.2d 1116 (Ala.2003) ], in which the medical experts indicated at least a possibility of a medical connection between the on-the-job accidents and the claimed injuries. In this case, Dr. Anderson definitively stated that the injury to the employee’s left hand did not affect any other part of the employee’s body. As in Southern Energy Homes, the only evidence supporting a finding that the effects of the left-hand injury extend to the left shoulder, neck, and upper back of the employee consists of the employee’s subjective testimony. However, the evidence as a whole weighs heavily against that testimony. Hence, we conclude, consistent with Hooks and Southern Energy Homes, that the employee did not present substantial evidence of medical causation.”
45 So.3d at 1284.
In this case, the trial court received two competing and irreconcilable conflicting versions of events. Under the employee’s version of events, he strained his back performing work activities and immediately reported his injury to Hill, as Rhonda confirmed. He and Rhonda then reported the injury again to the medical providers at Auburn Urgent Care and East Aabama on December 17 and December 19, respectively.[8] Under tlie employer’s version, the *898 employee had been having problems with his back for some time and left work early without informing Hill of any aggravation or other injury to his back due to his work activities. The employee did not report any specific injury to the medical providers on his first visit to Auburn Urgent Care but, instead, informed them that his back problem had been ongoing for a week. He did not tell McCants that he had hurt his back working, and he told Baker that his back problem related back several weeks. The employee then denied any injury to the medical providers at East Alabama. After repeatedly indicating that the injury was not occupational in nature, the employee finally, on his second visit to Auburn Urgent Care on December 21, 2009, asserted that he had injured his back working, and he had his counsel provide notification to the employer of the circumstances of the injury early the next day.
The circumstances strongly suggest that the employee originally treated his injury as purely personal in nature. Both Hill and Baker detailed the steps the employer requires to be taken when an occupational injury is reported, and it is undisputed that none of those steps were taken on December 17. Although the employee and Rhonda were the only persons who talked to the medical providers at Auburn Urgent Care and East Alabama about the source of the employee’s back problems, the content of the medical records from those facilities do not relate any report of an occupational injury; rather, those records coincide with the employee’s statement to Baker that his symptoms emerged well before December 17. After reviewing the history contained in the December 17 and December 19 medical records, Dr. Scott withdrew his earlier testimony that he had no reason to doubt the veracity of the employee. Dr. Scott then testified that the anatomical cause of the employee’s back and bilateral leg pain could have arisen from purely personal conditions without any contribution from his employment.
This case differs from Hooks, Ex parte Southern Energy Homes, and Davis in that the first mention in the employee’s medical records of a possible work connection came only four days after the alleged injury. In the foregoing cases, this court and the supreme court relied on the absence of any documented complaints for much longer periods as compelling evidence that the workers in those cases had not suffered work-related injuries. However, we find it equally, if not more, compelling in this case that, during the relatively brief period before the first recorded report of a work connection, the employee twice denied any recent injury as the source of his back problems, according to his medical records. If the absence of documented complaints supported reversal of the judgments in favor of the workers in the foregoing cases, evidence that a worker actually denied an injury, which evidence was not at issue in Hooks, Ex parte Southern Energy Homes, and Davis, should produce a similar outcome in this case.
*899 That is not to say that extrajudicial admissions such as those contained in the employee’s medical records are necessarily binding on the fact-finder; those admissions certainly may be contradicted, explained, or rebutted by other evidence. See 29A Am.Jur.2d Evidence § 785 (2008). In Equity Group-Alabama Division v. Harris, 55 So.3d 299 (Ala.Civ.App.2010), this court affirmed a judgment awarding compensation benefits to a worker despite the failure of the worker to immediately notify his employer that he had injured his back 15 minutes before leaving work for a scheduled vacation and despite the absence of any report of an occupational injury in his medical records. The worker reasonably explained that he had not notified his employer of the injury because he did not believe the injury was significant and because he had had difficulty communicating with his treating physicians due to his deafness. 55 So.3d at 309-10. In this case, on the other hand, the employee and his wife failed to offer any plausible explanation as to why the medical records from two independent facilities that treated the employee on two separate days following the alleged work-related injury confirm the employer’s version of events and contradict the employee’s claim,[9] or why the first mention of the alleged work-related injury in the medical records appears on the eve of the written notice to the employer of the employee’s workers’ compensation claim. Like in Hooks, Ex parte Southem Energy Homes, and Davis, the employee argues only that his statements in the medical records were not accurately transcribed without providing any reason for the alleged errors.
In its findings of fact, the trial court noted that no witness from the medical facilities had testified at trial. In Hooks, Ex parte Southern Energy Homes, and Davis, the employers simply introduced the medical records containing the adverse admissions of the workers, as is authorized by § 25 — 5—81(f)(4), Ala.Code 1975, without calling any witnesses to testify as to the circumstances under which those statements were taken and transcribed. By following the same procedure in this case, the employer did not thereby lessen the probative value of the content of the medical records. Moreover, the trial court heard the testimony of the employer’s witnesses that related basically the same information contained in the medical records, but its findings of fact do not address that striking similarity. Additionally, the employee did not attempt to impeach the credibility of the employer’s witnesses[10] and the trial court did not expressly find their testimony to be untrustworthy.
From its statements at the close of the trial, and the language of its judgment, the trial court obviously concluded that the employee should be given the benefit of the doubt because he had been a long *900 standing and hard worker for the employer. The trial court in Hooks relied in part on similar reasoning, see 844 So.2d at 1272, but this court reversed the trial court’s judgment in that case because the worker’s version of events was totally implausible in light of the medical records, his statements to coworkers, and the other circumstances in the case. 844 So.2d at 1273. Similarly, in this case, the fact that the employee was a good employee before December 17, 2009, or that he made a sympathetic witness, see Alabama Pipe Co. v. Wofford, 253 Ala. 610, 46 So.2d 404 (1950) (holding that an employer’s liability may not be based on sympathy), does not diminish the impact of the evidence of his extrajudicial admissions made immediately following his alleged injury, nor does it provide the missing rational explanation for those admissions.
The employee presented some evidence indicating that he injured his back as he claimed in his complaint; however, that evidence does not amount to substantial evidence that will support the determination of the trial court. For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded with instructions for the trial court to vacate its judgment and to enter a new judgment denying the employee’s claim for workers’ compensation benefits.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and THOMAS, JJ., concur.
BRYAN, J., dissents, with writing, which THOMPSON, P.J., joins.

. In response to questioning by the trial court, the employee originally indicated that, although he was not sure, he believed that he was at work on December 16, 2009; his time card indicates otherwise.

. The employer raised a hearsay objection to Rhonda’s testifying as to the employee’s statement, and the trial court sustained that objection. The employee's counsel then stated that he was eliciting the testimony solely to prove notice. The trial court allowed the testimony for that limited purpose.

. Coincidentally, the employer had designated East Alabama as an emergency-care provider, but the record does not indicate that the employee selected East Alabama for that reason.

. That note is contained on the same page as the notes from the December 21, 2009, visit, which references an "injuiy 12/17.”

. In his deposition, the employee testified that he had experienced identical pain before December 17, 2009; but he did not inform Dr. Scott of that history. At trial, the employee conceded that that information probably would have been important to the doctor.

. The employee cursorily argues in his brief to this court that the employer waived its right to contest causation in the hearing because it did not raise lack of causation as an affirmative defense. In its answer, the employer specifically denied that the employee had received any injuries due to an accident arising out of and in the course of his employment. The answer actually phrased the denial as an affirmative defense; however, lack of causation is not an affirmative defense to a workers' compensation claim. The claimant has the burden of proving causation in order to recover any workers’ compensation benefits. See Ex parte Patterson, 561 So.2d 236, 238 (Ala.1990). The record does not support the employee's argument.

. At one point in its brief to this court, the employer argues that the employee's claim was more correctly classified as being based on a repetitive-motion injury, which requires proof by clear and convincing evidence. See § 25-5-81(c), Ala.Code 1975. However, the employer did not raise that argument before the trial court, and we cannot now consider it for the first time on appeal. See generally Phillips v. Asplundh Tree Expert Co., 34 So.3d 1260, 1266 (Ala.Civ.App.2007) (refusing to consider argument asserted by dependent of deceased worker that trial court applied incorrect evidentiary standard in ruling on employer's summary-judgment motion because dependent failed to raise issue before trial court).

. We disagree with the dissent that the trial court reasonably could have found that the employee confused the source of his back pain. First, the trial court did not make any finding that the employee had "failed to immediately grasp that he had sustained a new, separate injury [and] that he consequently failed to emphasize that at least part of his back pain may be work related when seeking medical treatment immediately after the acci *898 dent.” 104 So.3d at 900-01 (Bryan, J., dissenting). Second, that version of events is not supported by any evidence. The employee did not testify that he was unsure if his back pain was work related or that he had failed to notify his medical providers that the injury was work related due to any uncertainty as to the cause of his back problems. He testified that, on December 17, 2009, he immediately knew that he had hurt his back at work, that he immediately notified Hill of the work-related nature of the injury, and that he unequivocally had notified his medical providers of the work-related nature of the injury. Hence, if the trial court had made the findings the dissent proposes, those findings *899 would not have been based on substantial evidence.

. We recognize that it is possible that two separate medical facilities on two separate occasions made the same transcription error on two separate days. However, Alabama law does not allow an employer's liability to be based on a mere possibility. See McCurry v. Gold Kist, Inc., 647 So.2d 732, 735 (Ala.Civ.App.1993). By requiring proof by a preponderance of the evidence, the Act demands that the evidence favoring the claim should at least prove the employer’s liability to a reasonable probability. See Hammons v. Chesebrough-Pond’s, Inc., 516 So.2d 713, 714 (Ala.Civ.App.1987).

. The employee's counsel questioned Baker briefly regarding whether the employer had a bonus program for decreasing reported work-related injuries. Baker stated that he had only heard rumors to that effect but that he was not a participant in any such program. Presumably, McCants, who was not a supervisor, would not have been a participant in that program either, if it existed at all, which was not proven.